NEAL et al. v. UNION MARINE INS. CO., Limited.

(Circuit Court of Appeals, Second Circuit. April 8, 1902.)

No. 132.

1. MARINE INSURANCE—CONSTRUCTION OF POLICY—MASTER'S DRAFT.

An open policy of marine insurance provided for insurance from time to time "on advances and for disbursements secured by master's draft pledging vessel and freight." A certificate was issued thereunder covering advances made by insured on a master's draft for disbursements, which did not itself pledge the vessel or freight, but when negotiated by the insured the managing owner of the vessel gave a writing, which was attached to the draft, making it payable from first freights received at port of destination, and pledging vessel, owners, and freight for its payment. Held, that such writing became a part of the draft, the pledge made being within the authority of the managing owner, and brought it within the terms of the policy, notwithstanding the fact that it also pledged the personal credit of the owners.

2. SAME—INSURANCE OF COLLATERAL.

In such case the insured was under no obligation to sue the owners before resorting to the insurance, which covered his collateral pledge of the vessel and freight, where the same was lost through perils of the sea, which was a risk insured against.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the district court, Southern district of New York (95 Fed. 491), in favor of libelants, doing business under the name of Peter Wright & Sons. The libel was filed to recover for the loss of advances alleged to have been made to the bark Sophia upon master's draft, pledging vessel and freight, and insured for the benefit of the libelants by the respondent. The facts sufficiently appear in the opinion.

Albert H. Wray, for appellant.
Henry G. Ward, for appellees.

Before WALLACE and LACOMBE, Circuit Judges, and THOMAS, District Judge.

LACOMBE, Circuit Judge. On January 15, 1894, respondent issued its open policy of insurance to the libelants, undertaking to insure them "on advances and for disbursements secured by master's draft pledging vessel and freight. * * * This insurance is to indemnify the assured for any loss through perils of the sea, or prior liens subsequently arising, which may prevent the collection of the said draft in whole or in part. * * *" The open policy was to "cover only such risks as may be reported to, and accepted by, this company."

F. A. D. Hancock was a managing owner of the American bark Sophia. On January 16, 1898, he applied to libelants to negotiate a draft dated Halifax, January 12, 1898, drawn by H. R. Pedersen, master American bark Sophia, on H. R. Pedersen, master American bark Sophia, Tralee, Ireland, at three days' sight, to the order of F. A. D. Hancock, for £390, "value received, and charge the same to account of necessary disbursements at this port of American bark Sophia." Libelants declined Hancock's proposition, stating that this was not such a draft as they would negotiate, but that if he, as managing owner, would give a letter instructing the master to pay the amount of the draft three days after arrival, and would pledge the vessel and freight, so as to bring the paper into the usual course of advance drafts, they would negotiate it. The next day, January 17th, he agreed to do this, and libelants notified their brokers to cover insurance under the open policy. This was done the same day by memorandum for the sum of $1,950, "on advances against captain's draft (cargo white pine deals), valued at sum insured, and shipped on board the bark Sophia at and from Halifax to Tralee." The next day, January 18, 1898, Hancock delivered to libelants the draft indorsed by himself and the letter of instructions, and received the money. The letter reads as follows:

"New York, January 18, 1898.

"Messrs. Peter Wright & Sons, New York—Dear Sirs: Master's draft American bark Sophia: In consideration of your having purchased the draft of Capt. H. R. Pedersen, master of the above-named bark, for the sum of £390, dated Halifax, N. S., January 12, 1898, drawn at three days' sight on Capt. H. R. Pedersen, Tralee, Ireland, in favor of F. A. D. Hancock, for necessary disbursements of the vessel at the port of Halifax, N. S., I hereby advise having instructed Capt. Pedersen to pay this draft out of the first freight money collected at the port of Tralee, and within ten days after arrival of the vessel at said port, and hereby pledge the vessel, owners, and freight in the above sum, in accordance with the custom for settlement of such obligation.

"Yours, truly,                                    F. A. D. Hancock,
          "Managing Owner American Bark Sophia."

The bark entered upon her voyage, met heavy weather, and lost her deckload and the freight thereon; put into Bantry Bay, Ireland, water-logged and dismasted, from which place she was towed to Tralee, where she was arrested for the payment of the claim of the Clyde Shipping Company, which towed her from Bantry Bay to Tralee, said claim amounting to £58. She was sold for the sum of £140,

and such proceedings were had in the high court of justice in admiralty that the proceeds of sale of said bark and her said freight were exhausted in the payment of other claims against her.

We concur with the district judge in the conclusion that the letter was, in substance, a part of the draft. Both documents represent but one transaction, are to be read together, and leave no doubt that between the libelants and the owners of the vessel the libelants were entitled to a lien upon vessel and freight for advances made to meet necessary disbursements. The appellant contends that the ship sailed before the draft was cashed, and that the £390 was not used for her necessary disbursements; but there is no evidence to sustain such contention. It is also argued that the policy did not attach because the transaction was not a loan on bottomry, since the credit of the owners was pledged to the payment of the draft. But the policy is not restricted to loans upon bottomry. It covers "advances and for disbursements secured by master's draft pledging vessel and freight." So long as the vessel and freight are pledged the terms of the policy are complied with, whether or not in addition there may be recourse to the owners. Nor is the transaction a mere wager. Libelants loaned money to the owners on their promise to repay. It is altogether probable that they would not have made such loan if the owners had no collateral to offer. They happened to have available collateral in a bark ready to sail and to earn freight, and upon pledging ship and freight the loan was made. To secure themselves against loss the libelants insured this collateral. This is a perfectly legitimate insurance against sea perils of property in which the lender has an insurable interest, for the loss of the vessel may cause him pecuniary loss. And the insured is under no obligation to sue the owners, who may or may not be solvent. The company insured his collateral that is lost, and to the extent of libelants' interest that loss is to be made good. When it is paid the underwriters will be subrogated to the rights of the insured, and may pursue the owners if they see fit to do so.

The contention that the action is barred because of libelants' failure to comply with the sue labor and travel clause is unsound. They did bring suit in Ireland, and followed the proceedings instituted there against the ship, ceasing to further prosecute because they were advised that to do so would be a waste of money, but notifying the insurers that they would take at their expense any other and further proceedings that the underwriters wished.

Decree is affirmed, with interest and costs.